UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEAL A. HANN, JR.,

        Plaintiff,

v.                                                          Case No. 13-CV-14616
                                                            Honorable Denise Page Hood

NESTLE USA, INC. and
NESTLE DREYER'S ICE
CREAM COMPANY,

        Defendants.

_____/

## ORDER DENYING IN PART AND GRANTING IN PART MOTION FOR SUMMARY JUDGMENT [Doc. No. 57]

## I.   INTRODUCTION

The instant dispute stems from the alleged termination of Plaintiff by Defendant Nestle Dreyer's Ice Cream Company on or about August 17, 2012. On November 6, 2013, Plaintiff filed a two-count complaint pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.* (the "ADA"). Plaintiff alleges Nestle Dreyer's Ice Cream Company and Nestle USA, Inc. (collectively, "Defendant") violated the ADA by: (a) failing to provide an accommodation for Plaintiff after he developed a heart condition (Count I); and (b) terminating him (Count II). On January 21, 2016, Defendant filed a Motion for Summary Judgment. **[Doc. No. 57]** The Motion was fully briefed, and a hearing on the motions was held on May 11, 2016.

For the reasons that follow, the Court grants in part and denies in part Defendant's

Motion for Summary Judgment.

## II.     BACKGROUND

Plaintiff, who is 42 years old, began working for Defendant Nestle Dreyer's Ice

Cream Company's ("Defendant") predecessor in 2002.  He worked as a Pre-Sales

Representative ("PSR"), and his supervisor, Jamie Gray ("Gray"), described Plaintiff

as a "good employee" and a "solid performer."  Plaintiff generally worked alone while

servicing about 40 stores.  Plaintiff states that it is uncontested that "the physical daily

routine for a PSR is to arrive at the customer's store, conduct a physical inventory as

to what products are needed in the store's display freezer.  The PSR then walks to the

storage freezer in the store, obtains the product that he needs and places it on a

wheeled cart and takes it to the floor to stock the store's display freezers. . . . It is

uncontested that . . . the products are packed [in] plastic sleeves and/or boxes of

varying weight." Doc. No. 58, PgID 750.

The physical requirements for a PSR at the time Plaintiff worked were:

Lift/Carry: Constantly, 1-5 pounds individual ice cream products up to
800-1000 items per stop or 2,500-4,000 items daily…occasionally
(15%), up to 25 pounds boxed and 6-8 pack ice cream product from
pallet to freezer rack or six-wheel cart, carry short distance up to 6 feet.

Push/pull: Occasionally, using both hands and arms while moving
materials via wheeled cart exerting a force up to 15-35 pounds
depending on surface/slope. Seldom, up to 35-75 pound force moving

palletized load using pallet jack.

Doc. No. 58, Ex. 3.  In mid-late 2012, while Plaintiff was on a leave of absence, pizza

products were added. The physical requirements of that position are:

> Push/Pull: Frequently, using both hands and arms, while moving
> materials via wheeled cart, exerting a force up to 15-35 pounds,
> depending on surface/slope. Rarely up to 35-75 pounds of force moving
> palletized load using pallet jack.
>
> Lift/Carry: Frequently, 1-5 pounds individual ice cream products up to
> 800-1000 items per stop or 2,500-4,000 items daily, no carrying.
> Occasionally (15%) up to 40 pounds boxed pizza and /or 6-8 packs ice
> cream product from pallet to freezer rack or six wheel cart, carry short
> distance up to six feet.

Doc. No. 58, Ex. 4.

 In November 2010, Plaintiff learned that he suffered from a heart defect that,

according to his physician, Dr. Vishal Gupta ("Dr. Gupta"), put him "at high risk of

sudden death."  In October 2011, Plaintiff suffered a car accident that was attributed

to "sudden cardiac arrest and sudden cardiac death." Doc. No. 57, Ex. G  Plaintiff was

diagnosed with hypertophic obstructive cardiomyopathy ("HCM"), a rare condition

that is incurable. Doc. No. 57, Ex. F at 19, 23, 28.  Days later, Plaintiff had surgery

to have a defibrillator implanted.  A second surgery, an alcohol ablation procedure,

was conducted in November 2011.  In late 2011/early 2012, Defendant's Human

Resources ("HR") representative, Pam Carr ("Carr"), provided Plaintiff with the forms

for short-term disability.  Plaintiff exhausted his Family and Medical Leave Act leave

3

in January 2012, and Defendant then put Plaintiff on an "unprotected leave of absence."

On April 10, 2012, Dr. Gupta completed Defendant's fitness-for-duty form, restricting Plaintiff from performing the following activities: (i) "lifting heavy objects;" (ii) "moving heavy objects;" and (iii) "any activity that causes exhaustion." Doc. No. 57, Ex. K.  Due to the lack of specific weight restrictions or identification of what constituted "exhaustion," Carr asked Plaintiff to have Dr. Gupta clarify the limitations set forth above.  Dr. Gupta responded by indicating that Plaintiff was restricted from lifting more than 15 pounds and pushing/pulling more than 20 pounds on an occasional basis and 50 pounds on a seldom (approximately once per day) basis. *Id.* at Ex. M.  Dr. Gupta still did not clarify what "exhaustion" meant, nor did Plaintiff discuss with Dr. Gupta what any of the above restrictions entailed. *Id.* at Ex. M; Ex. A at 200-01.[1]

In a June 13, 2012 letter, Carr informed Plaintiff that his medical restrictions could preclude him from returning to his PSR position.  By letter dated August 1, 2012, Carr advised Plaintiff that Defendant could not reasonably accommodate his

---

[1]Dr. Gupta later testified that Plaintiff should be fine returning to work if Plaintiff complied with the restrictions, Doc. No. 58, Ex. 1 at 98, but Dr. Gupta also recommended that Plaintiff "consider computer and/or desk type of jobs." *Id.* at Ex. N.

restrictions and that, as Plaintiff had been given 40 weeks of leave, Defendant would terminate Plaintiff's employment, effective August 17, 2012.

After Plaintiff's counsel contacted Carr, Defendant suspended its decision to terminate Plaintiff pending further review of the ability to accommodate Plaintiff.  In September 2012, Plaintiff's counsel proposed that another Defendant employee could do Plaintiff's "heavy lifting" or Plaintiff could be provided with alternative employment. *Id.* at Ex. Q.  On October 4, 2012, Defendant's counsel provided Plaintiff's counsel with a website address for reviewing Defendant's available employment opportunities, *Id.* at Ex. R, but Plaintiff's counsel responded a week later that there were no suitable opportunities for Plaintiff. *Id.* at Ex. S.  On October 19, 2012, Defendant's counsel outlined to Plaintiff's counsel what Defendant believed to be its accommodation efforts to that point. *Id.* at Ex. T.

On October 23, 2012, Plaintiff's counsel proposed that Plaintiff be accommodated as follows:

> Allow the Plaintiff to open boxes/containers/sleeves of the ice cream product and pizza product and lift them onto a wheeled cart according to his weight restriction and wheel them to the store display freezer in loads within the push/pull requirements of the Defendant as stated in his job description. . . . In other words, after he has inventoried the display freezers in the store, he could cut open the boxes and cartons that are too heavy for him to lift within his restrictions, and lift the individual units that do not weigh more that his weight restrictions onto the cart. The cart can then be wheeled to the floor in loads that are within the Defendant's requirements.

5

Doc. No. 58, PgID 752; Doc. No. 57, Ex. U.  On November 12, 2012, Defendant's counsel responded and explained why Defendant did not consider Plaintiff's proposal practical or feasible from a safety and efficiency standpoint. Doc. No. 57, Ex. V.  In December 2012, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging that Defendant discriminated against him, in violation of the ADA, for failing to accommodate his disability.

On April 1, 2014, Dr. Gupta modified Plaintiff's lifting restriction to 20 pounds. On December 31, 2015, Dr. Gupta indicated that Plaintiff could return to work with no restrictions.  Plaintiff currently works as a Sales Service Representative for an affiliate of Nabisco, and he performs merchandising activities similar to those he performed for Defendant. Doc. No. 57, Ex. A at 61-64.

## III.   STANDARD OF REVIEW

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict

6

for the nonmoving party." *Id*. Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV.   ANALYSIS

### A.   ADA Claims

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The ADA defines "discriminate" to include the failure to provide reasonable accommodation to an otherwise qualified individual with a disability, unless doing so would impose an undue hardship on the employer's business. *Id*. § 12112(b)(5). To establish a prima facie case, a plaintiff must show that he is disabled and otherwise qualified for the position, either with or without reasonable accommodation. *Kiphart v.*

> *Saturn Corp.*, 251 F.3d 573, 581 (6th Cir.2001). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to show that accommodating the plaintiff would impose an undue hardship on the operation of its business. *Id.*

*Keith v. Oakland County*, 703 F.3d 918, 923 (6th Cir. 2013). The parties do not dispute that Plaintiff had a disability within the meaning of the ADA or that Plaintiff could not perform as a PSR without accommodation. The parties dispute: (a) whether Plaintiff was qualified to perform as a PSR, with reasonable accommodation; and (b) such accommodation would impose an undue hardship on the operation of its business.

> In cases in which the plaintiff is seeking some accommodation on the part of the employer, and is claiming that he or she would be qualified to perform the essential functions of the job with such reasonable accommodation, the disputed issues will be whether such accommodation is reasonable, whether such accommodation would impose an undue hardship upon the employer, and/or whether the plaintiff is capable of performing the job even with the suggested accommodation, each of which may also be resolved through direct, objective evidence.

*Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1183 (6th Cir. 1996) (abrogated on other grounds).

Plaintiff has the burden to identify an accommodation and demonstrate that it is reasonable. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202 (6th Cir. 2010). Plaintiff must show that he is be "capable of performing the essential functions of the job with the proposed accommodation." *Id.* The Sixth Circuit has held that "[a]

8

disabled person is not qualified for an employment position . . . 'if he or she poses a 'direct threat' to the health or safety of others which cannot be eliminated by a reasonable accommodation.'" *Michael v. City of Troy Police Dep't*, 808 F.3d 304, 307 (6th Cir. 2015). Defendants "bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon [them]." *Monette*, 90 F.3d at 1186.

### 1. *Essential Functions*

In order for Plaintiff to be "otherwise qualified" under the ADA, he must be capable, with or without a reasonable accommodation, of performing the essential functions of a PSR. *Johnson*, 443 Fed. Appx. at 985. This burden includes establishing that his proposed accommodation was "objectively reasonable." *Shiplett v. National Railroad Passenger Corp.*, 1999 WL 435169, at *9 (6th Cir. 1999). To satisfy this requirement, the proposed accommodation must enable Plaintiff "to perform the essential functions of [his] position." 29 C.F.R. § 1630.2.

Under the ADA, essential job functions "are those functions which the individual who holds the position must be able to perform and that could not be removed without fundamentally altering the position." *EEOC v. AT & T Mobility Servs.*, 2011 WL 6309449, at *7 (E.D. Mich. Dec. 15, 2011). In determining whether

a job requirement constitutes an essential function of a position, "consideration shall be given to the employer's judgment as to what functions of a job are essential," in addition to consideration of any written descriptions of the job. *See* 42 U.S.C. § 12111(8); *Denczak v. Ford Motor Co.*, 215 Fed. Appx. 442, 444 (6th Cir. 2007). *See also* 29 C.F.R. § 1630.2(n)(3)(i)-(iii) (identifying "the employer's judgment" and "written job descriptions" as the first two factors demonstrating whether a function is "essential" under the ADA).

Defendant argues that, based on the restrictions imposed by Dr. Gupta, Plaintiff could not lift, carry, push and pull the merchandise that he had to move as a PSR. Plaintiff does not dispute that his weight restrictions precluded him from handling Defendant's merchandise in the manner he traditionally had done so, with the individual units packaged together in plastic sleeves or boxes. Plaintiff counters that, based on his proposed accommodation, he could remove the individual units from the sleeves and boxes and transport the merchandise on a cart in single units. Plaintiff states he would have to constantly lift items weighing only 1-5 pounds, well within his weight limits.

According to his testimony, Plaintiff contends his job duties have been and could continue to be performed because:

1.     Routinely and on a daily basis, he would cut open a case or box, and remove individual units as needed in the store display freezer.

2.      He would do this rather than take a full case or box to the display freezer during periods when sales of certain products were slow.

3.      He never had any problems carrying individual units on an L-cart.

4.      He never had any goals in terms of loading 40 cases per hour.

5.      Only 5% of his stores required him to be out of the store by 8 a.m.

6.      Plaintiff seldom had to move other products out of the way to access Defendant's products.

Doc. No. 58, Ex. 5 at 51-56. Plaintiff also testified that he watched Cochran on the job in November 2012 and observed that another PSR, Don Cochran ("Cochran"): (a) cut open cases and boxes and removed the individual units needed in the store display freezer; and (b) never had to move other products out of the way to access Defendant's products. *Id.* at 71-75.

Defendant responds that, even if moving the merchandise in single units were feasible, there were essential duties Plaintiff would have to perform that would violate the restrictions Dr. Gupta established for Plaintiff. Defendant cites the fact that PSRs had to move third-party merchandise in many instances in order to get to Plaintiff's merchandise. Doc. No. 57, Ex. A at 43. Defendant states that Plaintiff's description of his duties included having to move and re-stack other manufacturers' merchandise in freezers daily in order to gain access to his merchandise, though he did not know how much such merchandise weighed. Doc. No. 57, Ex. A at 43, 53, 64-65. If moving

11

third-party merchandise was a component of a PSR's duties, it may constitute an essential function of a PSR. *See, e.g., Hoskins v. Oakland Cty.*, 227 F.3d 719, 727 (6th Cir. 2000) (the daily potential for engaging in certain required conduct makes it an essential function).

Defendant also asserts that several of Defendant's individual ice cream and pizza items that could not be separated exceeded Plaintiff's weight restrictions. Defendant specifically identified two yogurt units that weighed 30 pounds each and argued that Plaintiff would have to move the 50 pound wood pallets on which merchandise was delivered Doc. No. 57, Ex. W (Item Nos. 8485 and 8448). Defendant argues that Plaintiff could not lift, within the restrictions imposed by Dr. Gupta, those individual items or the pallets, each of which Defendant contends was necessary to perform as a PSR.  Defendant asserts that, since Plaintiff could not perform the essential functions of his position, Plaintiff's proposed accommodation could not be reasonable. Citing *Johnson*, 2007 WL 1013247, at *6.

Plaintiff contends that there is a question of fact as to what his "essential job functions" were. *Bricker v. Cleveland Bd. of Ed.*, 145 F.3d 846, 849 (6th Cir. 1998) ("the determination of whether a given function is 'essential' within the meaning of the ADA and regulations promulgated thereunder is typically a question of fact and thus not suitable for resolution through a motion for judgment as a matter of law . . .").

12

 Plaintiff suggests that the essential function of a PSR is to get the Defendant's product to the display case and that his proposed accommodation (taking into account the restrictions set by Dr. Gupta) enables him to accomplish that function in a manner that both he and Cochran have utilized in the past.

Plaintiff offers an affidavit, Doc. No. 58, Ex. 7, in which he avers that: (a) he was never required to lift the yogurt units because they were delivered to the store by the driver who placed them in the store display case; and (b) he was not required to lift the 50 pound pallets. Defendant counters that Plaintiff's averments that a delivery driver would move the pallets or any other merchandise is belied by his deposition testimony, during which he never mentioned a delivery driver performing any PSR duties or functions. Defendant says Plaintiff has not provided any evidence that he could satisfy the push/pull weight restriction.

The Court finds that, although it is true that Plaintiff did not mention at his deposition that the delivery driver moved the pallets or other items, the representations in Plaintiff's affidavit do not contradict his deposition testimony and simply offer additional detail if true (which the Court must assume is the case for purposes of the Motion).

As to moving third-party merchandise, the Court finds that the task is not mentioned in the PSR job description, and Defendant has not offered any admissible

13

evidence as to what the third-party merchandise is or what it weighs. The Court finds that is also an issue of fact for a jury to decide.

###    2.    *Reasonableness of Plaintiff's Proposed Accommodation*

Defendant contends that Plaintiff's proposed accommodation is unreasonable as it relates to safety of persons and Defendant's product. Plaintiff argues, and the Court finds, that there is a genuine issue of fact whether Plaintiff's proposed accommodation is reasonable. *Keith*, 703 F.3d at 927; *Haschmann v. Time Warner Ent. Co., L.P.*, 131 F.3d 591, 601 (7th Cir. 1998).

An employee must show that "the accommodation is reasonable in the sense of both efficacious and of proportional to costs." *Monette*, 90 F.3d at 1183 (citation omitted). If the employee does so, the employer then carries "the burden of proving that [a] disability accommodation reasonable for a normal employer would break him." *Vande Zande v. State of Wisconsin Dep't of Admin.*, 44 F.3d 538, 543 (7th Cir. 1995).

> As stated by other circuits, the reasonable accommodation inquiry asks whether an accommodation "is reasonable in the run of cases, whereas the undue hardship inquiry focuses on the hardships imposed by the plaintiff's preferred accommodation in the context of the particular [employer's] operations. *Barth v. Gelb*, 2 F.2d 1180, 1187 (D.C. Cir. 1993)."

*Keith*, 703 F.3d at 927.

Contrary to Defendant's assertions, the evidence does not unequivocally

14

establish that Plaintiff's proposed accommodation would unduly burden Defendant. Defendant claims that Plaintiff's proposed accommodation would not work because: (a) the individual units might slip off the L-cart and be damaged or cause safety issues, and (b) the process would result in a lack of productivity due to more trips between the store freezer and store display freezer. The Court finds that such contentions are not undisputed, as evidenced by the testimony of Plaintiff and Gray. Gray stated that he did not know that there would be a problem with cutting the product out of the sleeves and carrying it to the shelves, "[o]ther than the instability of the load and other than the productivity requirement of 40 cases an hour." Dkt. No. 58, Ex. 6 at PgID 812. The Court finds that the instability concern and productivity requirement are questions of fact because: (1) Plaintiff "routinely cut open product and carried it to the floor safely and . . . he observed Don Cochran doing the same thing," Dkt. No. 58, PgID 753 and Ex. 5 at PgID 800, 805-06; and (2) Plaintiff "never had a goal of 40 cases an hour." Dkt. No. 58, Ex. 5 at PgID 803.

Defendant argues that Plaintiff's proposed accommodation ignores the most essential function of his PSR position, lifting merchandise in a manner that permits him to perform his overall duties. Defendant states Plaintiff has offered no evidence to contradict the testimony of Gray and Cochran that transporting individual units of merchandise on an L-cart or open cart would create potentially hazardous conditions

15

and diminished productivity. Doc. No. 57, Ex. B at 23-27 and 44-45; Ex. E at 28-32.

For the reasons stated above, including Plaintiff's testimony about Plaintiff's past

methods and what Plaintiff observed Cochran doing on certain runs, the Court finds

that there is evidence in the record that would enable a reasonable factfinder to

conclude otherwise.

### 3.   *Direct Threat to Plaintiff's Health*

Defendant also argues that Plaintiff was not qualified for the PSR position

because he could not perform it without directly threatening his health or safety, even

with a reasonable accommodation. Citing 42 U.S.C. § 12111(3); *Wurzel v. Whirlpool

Corp.*, 482 F. App'x 1, 11 (6th Cir. 2012).  The Court must consider four factors in

determining whether there is a direct threat to Plaintiff's health or safety: (1) the

duration of the risk of harm; (2) the nature and severity of the potential harm; (3) the

likelihood that harm will result; and (4) the imminence of the potential harm. 29

C.F.R. § 1620.2(r); *Estate of Mauro v. Borgess Medical Center*, 137 F.3d 398, 402

(6th Cir. 1998).

Defendant suggests that it was objectively reasonable for Defendant to

determine that Plaintiff's proposed accommodation to his PSR position posed a direct

threat to his safety because he has HCM.  Defendant contends that the nature and

severity of the potential harm to Plaintiff due to his heart condition is significant –

16

death is a realistic potential harm.  Defendant argues the potential harm to Plaintiff is imminent and apparent because: (1) his condition is incurable and worsens with age, (2) some of the merchandise Plaintiff must handle exceeds his lifting restrictions, even if broken down into individual units, and (3) the primary duty of a PSR is to lift "heavy" objects at a constant pace for long hours, which can be exhausting.

Defendant contends that knowledge of Plaintiff's heart condition and the lifting restrictions set by Plaintiff's cardiologist afforded Defendant a reasonable basis for concluding that the resumption of his PSR duties would be a direct threat to Plaintiff's health. Citing 29 C.F.R. § Pt. 1630, App. ("the employer must determine whether a reasonable accommodation would either eliminate the risk or reduce it to an acceptable level.").  Defendant also asserts that, because Dr. Gupta issued the restrictions and testified regarding the dangers to Plaintiff of resuming his PSR position, Defendant did not violate the ADA. *See Cannon v. Levi Strauss & Co.*, 29 F. App'x 331, 336 (6th Cir. 2002) (holding that the employer did not violate the ADA because it "followed the specific recommendations of [the employee's] treating physician"); *Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 665 (6th Cir. 2008) (no ADA violation because the plaintiff "admits that [the employer's] understanding of her impairments and how they limited her simply tracked the specific and valid restrictions prescribed by her own doctor").

17

Plaintiff argues that there is a question of fact whether he poses a "direct threat" to himself, as Defendant contends.  42 U.S.C. § 12111(3) states that "direct threat" means a "significant risk to the health and safety of others that cannot be eliminated by reasonable accommodation."        Plaintiff relies on the following language from a 2000 Sixth Circuit case:

> The ADA mandates an individualized inquiry in determining whether an employee's disability or other condition disqualifies him from a particular position. In order to properly evaluate a job applicant on the basis of his personal characteristics, the employer must conduct an individualized inquiry into the individual's actual medical condition, and the impact, if any, the condition might have on that individual's ability to perform the job in question. *See, e.g., Estate of Mauro v. Borgess Med. Cen.*, 137 F.3d 398 (6th Cir.) (conducting an individualized inquiry into the plaintiff's specific situation to determine whether HIV-positive surgical technician was otherwise qualified for his position despite his medical condition), cert. denied, 119 S.Ct. 51 (1998); *Wilson v. Chrysler Corp.*, 172 F.3d 500, 505 (7th Cir. 1999) (stating that "the ADA requires an individualized inquiry into the ability of the employee to perform a particular job"). Indeed, the Supreme Court in a recent triad of cases has again made clear that such an individualized determination -- one which focuses on the medical condition's actual effect on the specific plaintiff -- lies at the heart of the ADA. *See Sutton v. United Air Lines, Inc.*, 119 S.Ct. 2139, 2147 (1999) (holding that mitigating or corrective measures must be taken into account in judging whether an individual possesses a disability because doing otherwise would "run[] directly counter to the individualized inquiry mandated by the ADA"); *Murphy v. United Parcel Serv., Inc.*, 119 S.Ct. 2133 (1999) (holding that a truck driver with high blood pressure did not suffer a "disability" under the ADA where the medication he took allowed him to perform major life activities without substantial limitation); *Albertson, Inc. v. Kirkinburg*, 119 S.Ct. 2162 (1999) (holding that the ADA imposes a statutory obligation to determine the existence of disabilities on a case-by-case basis).

18

*Holiday v. City of Chattanooga*, 206 F.3d 637, 643 (6th Cir. 2000).

Plaintiff asserts that Defendant has no admissible evidence that it did anything to satisfy the individual inquiry required by the ADA. Plaintiff states that Defendant simply relied on communications–but never requested or looked at medical records–from Dr. Gupta and Defendant did not conduct an independent medical exam.

The Court finds that there remains a genuine dispute of material fact as to whether Defendant had a reasonable belief that Plaintiff posed a direct threat to himself. Dr. Gupta's restrictions on Plaintiff lessened over time and, more importantly, if Plaintiff were able to perform his duties by breaking items down into individual units (which the Court has to do when viewing the evidence in a light most favorable to Plaintiff), Dr. Gupta's restrictions would not be violated. The Court also notes that there must be an individualized assessment of the employee's abilities and job functions "based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. . . . A high probability of substantial harm is required; a speculative or remote risk will not satisfy that standard . . ." 29 C.F.R. § 1630(r); *Hamlin v. Charter Township of Flint*, 165 F.3d 426 (6th Cir. 1999). The Court finds there is a question of fact whether Defendant conducted the requisite individual inquiry in this case based on the incomplete

interactions and lack of detailed records of Dr. Gupta reviewed by Defendant.

      4.    *Undue Hardship*

      Defendant asserts that Plaintiff's proposed accommodation, even if reasonable, would result in an undue hardship on Defendant as a matter of law.  Undue hardship is defined as "an action requiring significant difficulty or expense, when considered in light of the factors set forth in . . . [42 U.S.C. § 12111(1)(B)]."  Those factors include: (1) the nature and costs of the accommodation needed; (2) the overall financial resources of the facility involved in providing the accommodation; (3) the overall financial resources of the covered entity; and (4) the type of operation of the covered entity, including the composition, structure and functions of its workforce. 42 U.S.C. § 12111(10)(A)-(B).  The Court can consider the "impact of the accommodation on the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business." 29 C.F.R. § 1630.2(p)(v).

      Defendant argues that Plaintiff's proposed accommodation is "simply . . . unworkable . . . in light of a PSR's job duties and work environment."  Defendant states that "Plaintiff's admitted diminished productivity" would preclude him from properly servicing his accounts, which would have a negative impact on Defendant's revenue and its relationship with its customers.  Defendant further states that it would

20

face increased potential liability due to safety hazards resulting from increased product damage from delivery of individual units.

Plaintiff claims that his proposed accommodation accomplishes the goal of stocking the store's display freezer–at no additional cost to the Defendant. Plaintiff asserts Defendant will have no loss of productivity because he will be able to stock the display freezers at the same rate, taking the same number of loads from the store freezer to the display freezers–both within Dr. Gupta's restrictions and the job description. Plaintiff also states that there is no "productivity requirement" and it is a question of fact for the jury to determine if he is sufficiently productive.

The Court agrees with Plaintiff. Defendant has not shown the absence of a genuine dispute of material fact that it would suffer an economic loss or interference with its operations if Plaintiff performed his duties pursuant to the proposed accommodation. There is evidence that Plaintiff could conduct the essential functions in a different way. Plaintiff has testified that both he and Cochran have broken down the items into smaller/lighter objects that in, virtually every instance, would be within the weight restrictions assigned by Dr. Gupta. The Court also notes that Plaintiff was paid a salary. If it took Plaintiff longer to make deliveries, that would affect Plaintiff but not necessarily Defendant – unless Plaintiff would be unable to complete his deliveries daily (and there is no evidence of that). As Plaintiff was not allowed to

return to work and attempt to perform under his reasonable accommodation, neither party can conclusively establish that Plaintiff would or would not be able to complete his required duties as a PSR. Once again, to the extent some items exceeded Plaintiff's restrictions (the yogurt units and the pallets), Plaintiff has offered evidence that someone else could perform those limited duties for him.

For the reasons stated above, the Court finds that there is a genuine dispute as to whether the accommodation proposed by Plaintiff would cause undue hardship on Defendant's operations.

### 5.   *Conclusion*

For the reasons stated above, Defendant's Motion for Summary Judgment is denied with respect to whether Defendant violated the ADA by: (a) failing to accommodate Plaintiff's disability; and/or (b) terminating Plaintiff. A genuine dispute of material fact remains as to whether Plaintiff could satisfy the essential functions of a PSR under his proposed accommodation.

## B.   Punitive Damages

Plaintiff seeks punitive damages from Defendant due to alleged intentional discrimination engaged Defendant. Defendant argues that Plaintiff has failed to identify any discrimination conducted "with malice or reckless indifference to the federally protected rights" of Plaintiff, as is required to recover punitive damages

22

under the ADA. *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 529-30 (1999) (internal quotation omitted). The requirements of "'malice or reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law." *Id.* at 535. Plaintiff has the burden of proving malice or reckless indifference by a preponderance of the evidence. *See generally PriceWaterhouse v. Hopkins*, 490 U.S. 228, 253 (1989).

Plaintiff asserts that there is a question of fact as to whether he is entitled to punitive damages because Defendant did not follow the law, even though Defendant is "one of the largest corporations in the world, and probably [has] one of the largest corporate legal departments" that should know what the law is and what the ADA requires when an employee requests an accommodation. Plaintiff claims that Defendant's failure to: (1) conduct an individualized inquiry, including obtaining medical information from Dr. Gupta and assessing it in conjunction with the essential functions of his job; (2) conduct an IME; and (3) interact with Plaintiff, demonstrate reckless indifference to the rights guaranteed to Plaintiff by the ADA.

The Court concludes that there is no evidence that Defendant acted "with malice or reckless indifference to Plaintiff's rights." *See, e.g., Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 903 (8th Cir. 2006) (holding that punitive damages were not recoverable where the employer failed to accommodate an

23

employee based on its perceived risk to the employee and his co-workers). The undisputed evidence reveals that Defendant considered the restrictions established by Plaintiff's physician, Dr. Gupta, in evaluating whether Plaintiff could satisfy the demands of a PSR position. The undisputed evidence also reflects that Defendant attempted to work with Plaintiff for months to try to accommodate him, even suspending Plaintiff's termination to do so.

The Court concludes that Defendant is entitled to judgment as a matter of law, and the Court grants Defendant's Motion for Summary Judgment, with respect to Plaintiff's claim for punitive damages.

## IV.   CONCLUSION

Accordingly, for the reasons stated above,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment **[Doc. No. 57]** is DENIED IN PART and GRANTED IN PART.

IT IS SO ORDERED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  August 31, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of

24

record on August 31, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager